## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## AIKEN DIVISION

STEWART R. BUCHANAN a/k/a )
DAPHNE RENEE' STEWART, )
            )
            Plaintiff, )
            )
            vs. )
            )
JUMPSTART SOUTH CAROLINA; )
MICHAEL SCHARFF, DANIEL )    No. 1:21-cv-00385-DCN-SVH
SULTON, BOB CALDWELL, SHARON )
MCDOWELL, CHRIS PHILLIPS, CHUCK )    **ORDER**
FIELDS, TOMMY HOLT, MIKE )
KIRIAKIDES, and CHRIS URBAN, *in* )
*their official capacities*; CASEY )
SANDERS and TOMMY MOORE, *in their* )
*official and individual capacities*; and )
DAVID JOHNSON, NFN BEARD, )
BRYAN STIRLING, LARRY EPPS, )
CHARLES WILLIAMS, and WILLIE )
DAVIS, *in their individual capacities*, )
            )
            Defendants. )
_____ )

     This matter is before the court on Magistrate Judge Shiva V. Hodges's report and

recommendation ("R&R"), ECF No. 102, that the court grant the South Carolina

Department of Corrections defendants' ("SCDC defendants")[1] motion for summary

judgment, ECF No. 74; grant the JumpStart defendants'[2] motion for summary judgment,

_____

       [1] The "SCDC defendants" collectively refer to defendants Bryan Stirling ("Stirling"), Larry Epps ("Epps"), Charles Williams ("Williams"), and Willie Davis ("Davis"), all in their individual capacities.
       [2] The "JumpStart defendants" collectively refer to defendants JumpStart South Carolina ("JumpStart"); Michael Scharff ("Scharff"), Daniel Sulton ("Sulton"), Bob Caldwell ("Caldwell"), Sharon McDowell ("McDowell"), Chris Phillips ("Phillips"), Chuck Fields ("Fields"), Tommy Holt ("Holt"), Mike Kiriakides ("Kiriakides"), and Chris Urban ("Urban"), all in their official capacities; Casey Sanders ("Sanders") and Tommy Moore ("Moore"), both in their official and individual capacities; and David

1

ECF No. 75, and deny plaintiff Stewart R. Buchanan a/k/a Daphne Renee' Stewart's ("Buchanan")[3] motion for summary judgment, ECF No. 88.  For the reasons set forth below, the court adopts in part and rejects in part the R&R.

## I.  BACKGROUND

JumpStart is a 501(c)(3) non-profit organization "dedicated to restoring the lives of inmates . . . inside and outside of prison."  ECF No. 21-1, Moore Decl. ¶ 3.  Pursuant to the SCDC's directive to aid incarcerated individuals with reentry into their communities under the State of South Carolina's Offender Employment Preparation Program, outlined in S.C. Code Ann. § 24-13-2110, the SCDC and JumpStart entered into a memorandum of understanding ("MOU") on May 26, 2015.  ECF No. 40-2 at 1.  Under the terms of the MOU, JumpStart agreed to provide its services to eligible inmates within SCDC facilities "to help ensure a successful reentry for such inmates into South Carolina communities."  Id.  JumpStart formed one of its ministry/discipleship programs at the SCDC's Perry Correctional Institution ("PCI").

Buchanan is an inmate at PCI.  In early 2018, Buchanan applied for and was accepted into JumpStart's discipleship program.  Buchanan alleges that to participate in the JumpStart program at PCI, an inmate must pass "a rigorous, forty (40) week, Christian religious character litmus test."  ECF No. 1-1, Compl. ¶ 29.  In the fall of 2018, Buchanan graduated from the program as one of the highest-performing participants.

---

Johnson ("Johnson") and NFN Beard (also referred to as "Dr. John Beard"; hereinafter, "Beard"), both in their individual capacities.

[3] The court previously followed Buchanan's lead in referring to Buchanan using male pronouns.  Buchanan has since informed the court that due to certain "events," she now prefers to be referred to "in the feminine gender."  ECF No. 108 at 1 n.1.  As such, the court agrees to do so in this order.

Following her graduation from the program, Buchanan requested to participate in JumpStart's leadership training program so that she could serve as a peer leader/coach for future JumpStart classes. In February 2019, upon completing the leadership training program, Buchanan began serving as a coach of a small group of participants in JumpStart's 2019 discipleship class. Buchanan claims that her job performance exceeded minimum expectations and that she continued to gain added responsibilities.

However, Buchanan claims those new responsibilities ended in early-March of 2019 when Epps, the senior chaplain at PCI, learned that Buchanan had been openly living as a transgendered individual from 2004 to 2008. Buchanan claims that subsequently, Epps banned Buchanan from using the PCI chaplaincy offices and equipment. Thereafter, Buchanan filed an American with Disabilities ("ADA") discrimination claim against Epps but was advised that the ADA did not address discrimination on the basis of sex. On May 13, 2019, Johnson and Beard allegedly summoned Buchanan into the PCI chaplaincy office, where Johnson informed Buchanan that she could either repeat the entire JumpStart program or "walk out the door." Compl. ¶ 41. Buchanan interpreted the decision as a discharge from her position and claims that as a consequence of losing her position in the program, JumpStart constructively denied her post-release employment and housing opportunities for which she had been on track to receive as a result of her advancement.

The JumpStart defendants dispute certain facts and events as represented by Buchanan. First, they claim that JumpStart does not begin the process of evaluating an inmate for participation in JumpStart's post-release housing or employment programs until the inmate's release is certain and imminent. As for Buchanan's removal from the

JumpStart program, the JumpStart defendants claim that Buchanan was not removed because she is a transgendered individual.  Rather, they submit that in March 2019, JumpStart discovered that one of Buchanan's close personal friends, John William Duncan ("Duncan"), was placed into Buchanan's small group.  JumpStart has a policy against allowing its peer leaders/coaches to have close or negative relationships with inmates in their small groups.  As a result, JumpStart decided to remove Duncan from Buchanan's group and informed Buchanan accordingly.  According to the JumpStart defendants, Buchanan demanded that Duncan stay in her small group.  Johnson and Sanders ultimately decided that based on her response, "Buchanan was not ready to serve as a peer leader/coach," and Johnson subsequently offered Buchanan the choice to either stay in the class as a participant or leave the class.  ECF No. 75-1, Sanders Aff. ¶¶ 26–27.  At that point, Buchanan apparently accused Johnson "of acting like so many 'other Christians' who had treated h[er] differently" based on her gender dysphoria.  ECF No. 75-2, Johnson Aff. ¶ 20.  Johnson claims he told Buchanan that her gender identity had "nothing to do with JumpStart's decision to remove h[er] from the peer leader/coach role."  Id.  According to the JumpStart defendants, Buchanan voluntarily removed herself from the JumpStart program.

On December 10, 2019, Buchanan sent a letter to Sanders—JumpStart's executive director—requesting a reversal of the decision.  Sanders denied the request on January 8, 2020.  On March 27, 2020, Buchanan notified the members of JumpStart's board of directors of the situation but received no response.  In January 2020, Buchanan filed a "Step 1" inmate grievance to the SCDC, which was denied by Buchanan's warden.  ECF No. 1-3 at 5.  On February 4, 2020, Buchanan filed a "Step 2" appeal, which the SCDC

4

denied.  Id. at 7.  Thereafter, Buchanan appealed the SCDC's decision to the South

Carolina Administrative Law Court, asserting that the SCDC unlawfully retaliated

against her for filing the initial sex discrimination complaint against Epps.  An

administrative law judge ("ALJ") dismissed the appeal without prejudice on October 29,

2020.  Id. at 2; see also Buchanan v. S.C. Dep't of Corr., No. 20-ALJ-04-0215-AP (S.C.

Admin. Law Ct. Oct. 29, 2020).

On February 5, 2021, Buchanan, proceeding pro se, filed the instant action against

the JumpStart defendants and the SCDC defendants.  Compl.  The complaint primarily

sets forth claims for (1) conspiracy to violate Buchanan's civil rights in violation of 42

U.S.C. §§ 1985 and 1986, (2) violations of her First and Fourteenth Amendment rights

under 42 U.S.C. § 1983, (3) violation of the Establishment Clause under the First

Amendment, and (4) violations of South Carolina statutory and constitutional law.  Id.

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g)

(D.S.C), all pretrial proceedings in this case were referred to Magistrate Judge Hodges.

On February 14, 2022, the court adopted the Magistrate Judge's R&R on Buchanan's

motion for default judgment and dismissed all claims made against the JumpStart

defendants in their individual capacity, with the exception of Sanders, Johnson, and

Beard.  ECF No. 100.

On October 19, 2021, the SCDC defendants filed their motion for summary

judgment.  ECF No. 74.  Buchanan responded to the motion on November 22, 2021, ECF

No. 86, and the SCDC defendants replied on December 6, 2021, ECF No. 96.  On

October 19, 2021, the JumpStart defendants filed their motion for summary judgment.

ECF No. 75.  Buchanan responded to the motion on November 22, 2021, ECF No. 87,

and the JumpStart defendants replied on November 29, 2021, ECF No. 92.  On

November 22, 2021, Buchanan filed her motion for summary judgment.  ECF No. 88.

The JumpStart defendants responded to the motion on December 3, 2021, ECF No. 93,

and the SCDC defendants responded to the motion on December 6, 2021, ECF No. 95.

On January 3, 2022, Buchanan replied to both responses.  ECF No. 99.  On March 2,

2022, Magistrate Judge Hodges issued the R&R, recommending that the court grant the

SCDC defendants' motion for summary judgment, grant the JumpStart defendants'

motion for summary judgment, and deny Buchanan's motion for summary judgment.

ECF No. 102.[4]  On March 31, 2022, Buchanan filed objections to the R&R.  ECF No.

108.  The SCDC responded to Buchanan's objections on April 13, 2022, ECF No. 109,

and the JumpStart Defendants responded to the objections on April 14, 2022, ECF No.

110.  Buchanan did not file a reply and the time to do both has now expired.  As such, the

matters are now ripe for the court's review.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the

Magistrate Judge's R&R to which specific, written objections are made.  28 U.S.C.

§ 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of

the Magistrate Judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  The

recommendation of the Magistrate Judge carries no presumptive weight, and the

responsibility to make a final determination rests with this court.  Mathews v. Weber, 423

---

[4] In the same R&R, the Magistrate Judge denied Buchanan's motions to compel and motion to appoint a guardian ad litem, ECF Nos. 70–71, 73.  However, the Magistrate Judge's rulings on those motions are final and those motions are not before the court.

U.S. 261, 270–71 (1976).  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).  The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made.  Id.  However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).  Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings."  Greene v. Quest Diagnostics Clinical Labs., Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted).  When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with."  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted).  Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in a magistrate judge's proposed findings.  Id.

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

Plaintiff is proceeding pro se in this case. Pro se complaints and petitions should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert. denied, 439 U.S. 970, 99 (1978). A federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990).

## III.  DISCUSSION

The SCDC defendants and the JumpStart defendants filed separate motions for summary judgment. In both motions, the parties argued, in some variation, that Buchanan lacks standing to sue and that she failed to exhaust her administrative remedies. The Magistrate Judge recommended the court deny defendants' motions for summary judgment on those two grounds. Specifically, the Magistrate Judge agreed with defendants that Buchanan's claim alleging a deprivation of future housing and

8

employment opportunities through JumpStart was purely conjectural and thus did not constitute a concrete and particularized injury under the standing analysis. However, the Magistrate Judge determined that Buchanan's other claims—namely, that Epps banned her from using the chaplaincy offices and equipment and that other defendants discriminated and retaliated against her by dismissing her from the JumpStart program— satisfy the Article III standing requirement. As for defendants' argument that Buchanan failed to exhaust her administrative remedies as required under 42 U.S.C. § 1997e(a), the Magistrate Judge found that defendants had failed to carry their burden to show that the grievances filed by Buchanan were insufficient administrative remedies under the law. Buchanan, naturally, does not object to the Magistrate Judge's recommendations on these two issues, and the SCDC and JumpStart defendants did not file objections to the R&R. In the absence of an objection, the court "must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond, 416 F.3d at 315 (internal quotations and citation omitted). The court finds no clear error in the Magistrate Judge's findings on standing and exhaustion.

The Magistrate Judge next recommended that the court grant the JumpStart defendants' motion for summary judgment and the SCDC defendants' motion for summary judgment. First, the Magistrate Judge determined that none of the JumpStart defendants were state actors, and therefore, Buchanan couldn't sue them under § 1983. Second, the Magistrate Judge determined that Buchanan had failed to properly allege a violation of the Fourteenth Amendment's Equal Protection Clause against Epps. Third, the Magistrate Judge recommended the court find that Buchanan's claims against Williams and Davis in their individual capacities were premised on their ministerial roles,

9

and not their personal actions in the deprivation of Buchanan's rights, such that they failed to state a claim for relief. Fourth, the Magistrate Judge determined that Buchanan was not able to sue Stirling in his official capacity for preliminary injunctive relief. As a result of those findings, the R&R recommended granting summary judgment in favor of the SCDC and JumpStart defendants on all claims. Finally, the Magistrate Judge recommended denying Buchanan's motion for summary judgment because "it consist[ed] solely of a two-page notarized affidavit, asserting facts relevant to his claims, but asserting no argument in support." ECF No. 102, R&R at 51. Buchanan first levies a general objection regarding the issue of estoppel before raising additional objections to the Magistrate Judge's recommendations regarding the SCDC and JumpStart defendants' arguments. The court reviews each of those objections in turn, ultimately finding that summary judgment is warranted in defendants' favor on all claims.

### A. Estoppel

Buchanan first argues that the principle of estoppel should preclude "all facts and affirmative defenses" that were raised by defendants "due to intentional and deliberate waiver during the administrative process." ECF No. 108 at 3. Buchanan previously raised the same argument in response to defendants' motions for summary judgment. Specifically, Buchanan asserted that during the ALJ's review of Buchanan's appeal, defendants had solely moved to dismiss the appeal on Fifth Amendment grounds. As such, Buchanan argues that defendants' motion for summary judgment raises arguments that "could have been raised before the [ALJ] or preserved upon appeal. They have waived the defenses listed in their motions for summary judgment in their entirety. Their claims are barred by the doctrine of waiver, res judicata, administrative estoppel, record

estoppel, estoppel by silence, laches[,] and stare decisis." ECF No. 86-2 at 2. In the R&R, the Magistrate Judge reviewed Buchanan's arguments and the applicable case law and determined that Buchanan's arguments were "without merit." R&R at 50 n.21. Buchanan argues that the Magistrate Judge cursorily reviewed the matter without acknowledging "the fact[s] and law." ECF No. 108 at 2–3. Based on the relatively minimal weight afforded to the argument in Buchanan's prior briefs, the court considers the Magistrate Judge's depth of discussion justifiable. In any case, even under a de novo review, Buchanan's arguments fail.

To begin, Buchanan accurately describes the ALJ's decision. As Buchanan properly states, the ALJ dismissed Buchanan's appeal without prejudice because Buchanan's claim against the SCDC "has its remedy under a federal § 1983 action" and "is more properly heard in federal court." ECF No. 1-3 at 3. But Buchanan errs in characterizing any facet of the ALJ's dismissal without prejudice as binding upon this court. First, as a matter of res judicata, the very fact that the court dismissed the appeal without prejudice means that defendants are not restricted from litigating their defenses before this court as they see fit. Just as the ALJ's ruling permitted Buchanan to bring her § 1983 claims in this tribunal, the ruling alone does not bind defendants or prevent them from making certain arguments in this proceeding. C.f. Behrens v. Arconic, Inc., 502 F. Supp. 3d 931, 936 (E.D. Pa. 2020) (noting that because the district court dismissed a case without prejudice, the foreign tribunal was not bound to reject the plaintiffs' damages claims or interpret the district court's dismissal as a rejection of those claims).

Second, as a matter of judicial estoppel, the court similarly finds that the doctrine has no application here. "Judicial estoppel precludes a party from adopting a position

that is inconsistent with a stance taken in prior litigation . . . to protect the essential

integrity of the judicial process." John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d

26, 28–29 (4th Cir. 1995).  The Fourth Circuit has laid out a four-factor test to determine

when to apply judicial estoppel: (1) a party must be attempting to adopt a position before

the current court that is inconsistent with a stance taken in prior litigation; (2) that

position must be one of fact, not law; (3) the prior court must have actually accepted the

inconsistent position; and (4) the party to be estopped must have intentionally misled the

court to gain an unfair advantage.  Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996).

"As an equitable doctrine, judicial estoppel is invoked in the discretion of the district

court and with the recognition that each application must be decided upon its own

specific facts and circumstances." King v. Herbert J. Thomas Mem'l Hosp., 159 F.3d

192, 196–97 (4th Cir. 1998).  Here, however, Buchanan fails to direct the court to an

inconsistent position that defendants adopted.  For judicial estoppel to apply, a party must

be attempting to assert an inconsistent factual position, not merely a different legal theory

or an elaboration of a prior allegation.  See Scott v. Family Dollar Stores, Inc., 733 F.3d

105, 118 (4th Cir. 2013) (finding no judicial estoppel where the appellant's amended

complaint presented the same factual position as in its prior complaint but "merely

elaborate[d] on the allegation in the original complaint").  Even if defendants had indeed

adopted an inconsistent position, the ALJ would not have accepted the inconsistent

position in the prior litigation because, as discussed above, the ALJ did not ultimately

issue a decision on Buchanan's § 1983 claim.

   Finally, as a matter of waiver or laches, Buchanan's argument also fails.  To

combat the lack of an inconsistent position, Buchanan argues that the court should apply

the principle of "estoppel by silence."  See, e.g., ECF No. 108 at 8.  In support of this

position, Buchanan reproduces a history of various SCDC filings and statements made by

the SCDC defendants, noting that in those filings, the SCDC defendants never corrected

Buchanan's stated beliefs about why she was being discharged.  Buchanan also argues

that the record is silent as to any other explanation of the events—presumably referring to

the SCDC defendants' account of the incident involving Buchanan's friend, Duncan, and

of Buchanan's behavioral issues.  Buchanan then cites a Western District of New York

decision that held that the government was equitably estopped from arguing that a

defendant failed to exhaust the administrative requirements of the compassionate release

statute, as stated in 18 U.S.C. § 3582(c)(1)(A), because the government had failed to raise

exhaustion earlier.  United States v. Wen, 454 F. Supp. 3d 187, 192 (W.D.N.Y. 2020).

Buchanan's reliance on Wen is misplaced.  The court's decision in Wen is unique to

§ 3582(c)(1)(A), as the court specifically determined that the exhaustion requirement in

the statute is non-jurisdictional and can be waived.  Id. at 193–94.  That analysis is

inapplicable here, where there is no similar statute and no basis for otherwise finding that

defendants waived certain arguments by failing to raise them earlier.  And, while this

court has previously recognized the doctrine of "estoppel by silence," the doctrine only

arises "where the estopped party owes a duty to speak to the other party but refrains from

doing so, thereby leading the other party to believe in an erroneous state of facts."

Provident Life & Accident Ins. Co. v. Driver, 451 S.E.2d 924, 928 (S.C. Ct. App. 1994)

(citing S. Dev. Land & Golf Co., Ltd. v. S.C. Pub. Serv. Auth., 426 S.E.2d 748 (S.C.

1993)).  Here, Buchanan has failed to direct the court to any principle or rule requiring

defendants to explain the full reasoning for her termination from the program to her.

Additionally, the court notes that Buchanan was not ultimately led to believe an erroneous set of facts due to the supposed withholding of information. In response to Buchanan's first set of interrogatories, Sanders indicated that Buchanan had been discharged due to behavioral issues, indicating that defendants did not, in fact, raise the argument for the first time in their motions for summary judgment. See ECF No. 74-3 at 3–4. And importantly, the warden's response to Buchanan's Step 1 grievance—which stated that there was "no evidence that . . . Epps and/or other staff or volunteers have engaged in activities that would justify their removal from SCDC"—was not inconsistent with their current positions.[5] ECF No. 1-3 at 6. As such, the court declines to find that defendants should be equitably estopped from asserting their current arguments.

### B. JumpStart Defendants

Next, the court turns to the reasons that the Magistrate Judge provided in support of granting summary judgment in the JumpStart defendants' favor. In their motion for summary judgment, the JumpStart defendants argued that their "challenged actions were ecclesiastical in nature" and, therefore, could not "constitute state action as a matter of law." ECF No. 75-3 at 13 (cleaned up). The JumpStart defendants' argument referred to

---

[5] Buchanan also argues in the same section that the reasons provided by defendants for Buchanan's discharge are pretextual. Buchanan appears to be making a new argument in support of her retaliation claim by relying on the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See ECF No. 108 at 8 ("Plaintiff asserts she has plausibly shown a prima facie case for retaliation for having exercised her First Amendment rights[ in response to] Fourteenth Amendment discrimination . . . ."). Curiously, however, Buchanan also argued in her response to defendants' motion to summary that both defendants and the court had misconstrued her complaint and that she was not, in fact, asserting a claim under Title VII. See ECF No. 86-2 at 13. These arguments are difficult to square, but even if the court favorably construes the complaint as asserting a retaliation claim, the court need not reach the issue of pretext because summary judgment is appropriate on other preliminary grounds, as discussed infra.

the requirement that civil suits under 42 U.S.C. § 1983 must be brought against state

actors.  Specifically, a claim for relief under § 1983 must sufficiently allege that a

plaintiff was injured by "the deprivation of any [of his or her] rights, privileges, or

immunities secured by the Constitution and laws" by a "person" acting "under color of

state law."  42 U.S.C. § 1983; see Monell v. Dep't. of Soc. Serv., 436 U.S. 658, 690 n.55

(1978).  JumpStart is a 501(c)(3) non-profit organization and is "privately funded."  ECF

No. 74-15, Epps Aff. ¶ 14.  Courts apply a two-part approach for determining if a private

party is considered a state actor for purposes of § 1983 by asking, first, if "the deprivation

[is] caused by the exercise of some right or privilege created by the State," and second, if

"the party charged with the deprivation [is] a person who may fairly be said to be a state

actor."  Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).  Under the second part

of the test, the Fourth Circuit originally recognized four contexts under which a private

party can be deemed a state actor, Andrews v. Fed. Home Loan Bank of Atlanta, 998

F.2d 214, 217 (4th Cir. 1993), and some courts continue to rely on those four

circumstances, Davison v. Facebook, Inc., 370 F. Supp. 3d 621, 628 (E.D. Va. 2019).

Those circumstances are:

> (1) when the state has coerced the private actor to commit an act that would
> be unconstitutional if done by the state; (2) when the state has sought to
> evade a clear constitutional duty through delegation to a private actor; (3)
> when the state has delegated a traditionally and exclusively public function
> to a private actor; or (4) when the state has committed an unconstitutional
> act in the course of enforcing a right of a private citizen.

Andrews, 998 F.2d at 217.  Recently, however, the Fourth Circuit has clarified that "there

is no bright-line rule separating state action from private action" and "the inquiry is

highly fact-specific in nature."  Peltier v. Charter Day Sch., Inc., 37 F.4th 104, 116 (4th

Cir. 2022).  As such, courts "consider the totality of the circumstances of the relationship

between the private actor and the state" to determine if the private actor may be fairly characterized as a state actor.  Id.

Based on those standards, the Magistrate Judge conducted a thorough analysis of the relationship between JumpStart and the SCDC.  A majority of courts find that private contractors that provide food or medical care can be held liable under § 1983 arising from their work at state-operated correctional facilities.  See Christian v. Hale, 2019 WL 7559789, at *7 (S.D. W. Va. June 27, 2019) (collecting cases).  However, the issue of whether private organizations that provide rehabilitative or educational services are performing a traditional public function is not as well-established.  In the R&R, the Magistrate Judge acknowledged that some courts have found that a state may delegate its statutory duty to provide rehabilitative services to inmates where those services have traditionally been in the exclusive prerogative of the state.  See R&R at 39 (citing Rauch v. Dep't of Corr. of Pa., 2007 WL 4198425, at *6 (M.D. Pa. Nov. 20, 2007) ("Gateway and its employees are state actors . . . for purposes of § 1983 when undertaking their duties in treating [inmates'] substance abuse problems.").  However, the Magistrate Judge distinguished the circumstances presented in this case from those in Rauch, noting that here, SCDC did not outsource its reentry-preparation duties exclusively to JumpStart. The Magistrate Judge further distinguished an Eighth Circuit case which held that a religious group that provided rehabilitation services in a prison was considered a state actor for purposes of § 1983.  Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc., 509 F.3d 406 (8th Cir. 2007).  In addition to the fact that the private organization, InnerChange, "solely provided the program," the Magistrate Judge also observed that in Americans United, the Iowa legislature apportioned approximately

16

$310,000 each year to InnerChange, via its Department of Corrections, until the contract expired. Id. at 418. The funding accounted for thirty to forty percent of InnerChange's operating costs. Id.

Buchanan raises several objections in response to the Magistrate Judge's analysis. First, Buchanan disputes the Magistrate Judge's conclusion that SCDC worked with other organizations at PCI to provide reentry services, in contrast with the facts in Rauch. Upon review, the court agrees with Buchanan that Epps, in his affidavit, does not actually state that the SCDC outsourced its responsibilities to other organizations outside of JumpStart at PCI. Rather, Epps appears to be referencing transitional houses and programs for paroled inmates across the entire state. Epps Aff. ¶ 6. Buchanan claims, albeit for the first time in her objections, that none of the other organizations at PCI provided employment preparation services. ECF No. 108 at 13. As the court views it, that leaves a material dispute as to whether there were any other programs taking part in the Offender Employment Preparation Program at PCI such that JumpStart either was or was not the sole provider of a traditional state service.

Despite the court's departure from the R&R in this narrow respect, the court ultimately finds that the R&R did not err in recommending the court find that JumpStart and its employees are not state actors. Even if the court determined, in the light most favorable to Buchanan, that SCDC exclusively contracted with JumpStart to provide reentry preparation services at PCI, the circumstances presented here remain wholly distinguishable from those other cases that found a state-actor relationship. For example, in Americans United, the court also focused on the fact that the state provided the private party, InnerChange, with "24-hour power to incarcerate, treat, and discipline

17

inmates . . . in concert with the [Department of Corrections]." <u>Ams. United</u>, 509 F.3d at 423. There is no evidence that JumpStart has the same ability. Indeed, JumpStart represents that, at most, their disciplinary authority is limited to downgrading a participant's "folder" status in the program, which they chose to do for Buchanan by downgrading her status from blue to red. ECF No. 75-2, Johnson Aff. ¶ 24. On the other end, SCDC representatives were not involved in the process of determining which inmates were allowed to participate in the JumpStart discipleship program. Sanders Aff. ¶ 5. The Eight Circuit also emphasized that "the Iowa legislature made specific appropriations from public funds 'for a values-based treatment program . . .' when InnerChange solely provided the program." <u>Id.</u> Although the court finds that there is a material dispute over whether JumpStart was the sole provider of reentry preparation programs at PCI, Buchanan does not meaningfully dispute that JumpStart was privately funded and provided an entirely voluntary program. As another court explained when determining that a plaintiff did not plausibly allege that a private residential institution was a state actor, "[a] contract for services between [a private entity] and the [state], together with a state licensure to operate the home, does not a state actor create." <u>Howell v. Father Maloney's Boys' Haven, Inc.</u>, 976 F.3d 750, 754 (6th Cir. 2020); <u>see also</u> <u>Harden v. Bair</u>, 2022 WL 2716299, at *6 (E.D. Mich. May 18, 2022) ("[A] state contract for a private company to provide community-based services does not establish a close enough nexus between the state and the challenged action."). At bottom, the state's mere acquiescence in a private party's actions is not sufficient," <u>Wickersham v. City of Columbia</u>, 481 F.3d 591, 597 (8th Cir. 2007), and the court does not find that SCDC's

actions rise to anything more than an agreement that JumpStart could provide a voluntary religious program for inmates.

Finally, Buchanan expresses great concern with the R&R's purported recommendation that the court find that the JumpStart program was "inherently ecclesiastical" and thus not related to state action. ECF No. 108 at 2. According to Buchanan, the Magistrate Judge improperly raised this "defense" on the JumpStart defendants' behalf sua sponte before relying on it to reach its recommendation to the court. The court does not read the R&R the same way. To be sure, the JumpStart defendants, in their motion for summary judgment, rely heavily on caselaw providing that a person is not a state actor when he engages in "inherently ecclesiastical functions." E.g., Montano v. Hedgepeth, 120 F.3d 844, 851 (8th Cir. 1997). However, the R&R expressly stated that the court "need not address this issue" because Buchanan had argued that she was unable to generally participate in the JumpStart program, not necessarily that she was barred from participating in religious services at PCI, thus "rendering the 'ecclesiastical' line of cases inapposite." R&R at 44–45. The R&R departed from the ecclesiastical-functions test and instead analyzed whether JumpStart's participation in the Offender Employment Preparation Program and execution of the MOU rendered it a state actor. Id. at 36. The court finds that there is no ambiguity with the R&R's position and adopts the same. In other words, even if JumpStart had provided entirely secular services, the court would reach the same conclusion about whether it was a state actor, for the reasons discussed above. The court thus overrules Buchanan's objections and grants the JumpStart defendants' motion for summary judgment on the grounds that they are not state actors for purposes of 42 U.S.C. § 1983.

### C. Epps

Next, the court turns to the SCDC defendants' motion for summary judgment. The R&R recommended granting summary judgment in their favor on separate grounds—first for Epps, then for Williams and Davis, and finally for Stirling. Starting with Epps, the complaint alleges that Epps deprived Buchanan of her Fourteenth Amendment right to Equal Protection of the Law by banning her from using the PCI chaplaincy office and equipment "due to h[er] transgender status." Compl. ¶ 51. The Magistrate Judge recommended the court find that Buchanan's "limited allegations are insufficient to establish [that s]he was treated differently from others . . . similarly situated" at the motion for summary judgment stage. R&R at 47.

In response, Buchanan objects[6] to the Magistrate Judge's finding that Buchanan "offers no more than [her] own conclusory and vague allegations." See R&R at 47. However, even in those objections, Buchanan continues to offer nothing more than generalizations in an attempt to try and prove discriminatory intent. As discussed earlier, the party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Here, Epps has met that burden by showing through affidavits, emails,

---

[6] Additionally, Buchanan takes issue with a footnote in the R&R, claiming that the footnote improperly claimed that Buchanan was discriminated based on "homosexual activities." ECF No. 108 at 22–23 (citing R&R at 15 n.8). Buchanan misconstrues the footnote. As the court reads it, the Magistrate Judge interpreted Buchanan's reply in support of her motion for summary judgment as arguing, for the first time, that Epps further discriminated against Buchanan based on the perception that she was engaging in "homosexual activities," in addition to being a transgendered individual. The Magistrate Judge was attempting to acknowledge an argument made by Buchanan for her benefit. To the extent that was not Buchanan's contention, the argument had no bearing on the Magistrate Judge's recommendation, and it is not one that the court relies upon either.

and discovery responses that Buchanan was both barred from the chaplaincy office and dismissed from the program due to behavioral issues.  See Epps Aff. ¶¶ 26–27; ECF No. 75-2, Johnson Aff. at 7 (attaching email to Epps); ECF No. 74-3 at 1–2.  Buchanan then argues that the Magistrate Judge erred by improperly weighing the evidence at the motion for summary judgment stage.  According to Buchanan, the Magistrate Judge accepted the JumpStart defendants' evidence as true but refused to accept allegations in Buchanan's verified complaint as evidence.  ECF No. 108 at 19–20.  However, Rule 56(e) explicitly provides that when a motion for summary judgment is made and supported by affidavits, an adverse party may not rest upon the mere allegations or denials of his pleadings.  Fed. R. Civ. P. 56(e); see Hargrove v. Smith, 2008 WL 687053, at *1 (W.D.N.C. Mar. 10, 2008) ("This rule requires that if [the responding party] has any evidence to offer to counter the evidence contained in the Motion for Summary Judgment . . . , [s]he must present it to the Court in the form of documents, affidavits, or unsworn declarations under penalty of perjury.").  "Once the movant has made this threshold showing, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in h[er] pleadings." Watts v. Harris, 2019 WL 7040603, at *3 (D.S.C. Oct. 22, 2019) (citing Celotex, 477 U.S. at 324).  As for Buchanan's contention that her verified complaint may serve as a counterweight to the SCDC defendants' evidence, certainly, a verified complaint may be "the equivalent of an opposing affidavit for summary judgment purposes." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).  However, "a verified complaint that alleges facts that are made on belief or information and belief is insufficient to oppose summary judgment." Walker v. Tyler Cnty. Comm'n, 11 F. App'x 270, 274 (4th Cir. 2001) (citing Fed. R. Civ. P. 56(e)) (other citations

omitted).  Here, both the verified complaint and Buchanan's affidavit only make generalized claims—premised on Buchanan's personal belief—that Epps discriminated against her for being a transgendered individual.  See Compl. ¶ 36 (stating that after "Epps learned of Plaintiff's having lived openly as transgender between 2004 and 2008," he "banned Plaintiff from using Perry Chaplaincy offices and equipment"); ECF No. 88-2, Buchanan Aff. ¶ 6 ("The Defendants' description of my termination . . . . will not withstand analysis.").  Thus, even in the light most favorable to her, as the non-movant, Buchanan has failed to create a genuine factual dispute, and accordingly, the court overrules Buchanan's objections and grants summary judgment in favor of Epps.

### D.  Williams and Davis

The complaint alleges that Williams and Davis, in their individual capacities, overlooked the available information when they reviewed and responded to Buchanan's Step 1 and Step 2 grievances and "were deliberately indifferent to [Buchanan's] injuries." Compl. ¶ 45.  The Magistrate Judge recommended the court find that such allegations were insufficient to state a claim against Williams and Davis because "an official's response to a prisoner's after-the-fact grievance does not provide a basis for a Section 1983 claim."  R&R at 48–49 (quoting Ford v. Stirling, 2017 WL 4803648, at *2 (D.S.C. Oct. 25, 2017)).  In response, Buchanan cites a case for the proposition that defendants who deliberately take actions that protect others who discriminate against a plaintiff may be found liable as well.  ECF No. 108 at 24 (citing Rogers v. U.S. Dep't of Health & Human Servs., 466 F. Supp. 3d 625, 647 (D.S.C. 2020)).  However, Buchanan's reliance on Rogers is misplaced.  There, not only was the court ruling on a motion to dismiss, but it also decided that the complaint plausibly alleged that the state-official defendants' own

individual actions violated the Constitution by, for instance, allegedly granting waivers permitting certain faith-based child-placement agencies to discriminate on the basis of religion.  Rogers, 466 F. Supp. 3d at 647.  Here, there are no allegations or evidence that Williams and Davis did anything more than review Buchanan's grievances, and Rogers thus fails to reach the crux of the Magistrate Judge's conclusion, which was that such claims cannot give rise to liability.  The court grants summary judgment in favor of Williams and Davis on the claims made against them.

### E.  Stirling

Finally, the complaint states that Stirling "is being sued in his official capacity for prospective injunctive relief only."  Compl. ¶ 24.  In the light most favorable to Buchanan, the complaint appears to allege that Stirling is being sued pursuant to Ex parte Young, 209 U.S. 123 (1908).

The Eleventh Amendment bars suits by citizens against non-consenting states brought either in state or federal court.  See Alden v. Maine, 527 U.S. 706, 712 (1999); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 10 (1890).  Such immunity extends to arms of the state, including a state's agencies and instrumentalities and employees.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101–02 (1984); Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  In Ex parte Young, the Supreme Court recognized an exception to Eleventh Amendment immunity for state officers "which permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law."  McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010).  A violation is considered ongoing "when a state officer's

enforcement of an allegedly unconstitutional state law is threatened." Id. (citation omitted); see also Seminole Tribe, 517 U.S. at 73 (describing prospective injunctive relief as that necessary to "end a continuing violation of federal law").

The Magistrate Judge recommended the court dismiss the claim against Stirling because Buchanan had failed to meet the standard for issuing a preliminary injunction as set forth in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008). R&R at 50. The court departs from the R&R in this narrow respect. Even if Buchanan has not met the preliminary injunction relief standard, she may still be able to show that the court can issue some form of prospective, injunctive relief to prevent an ongoing violation of Buchanan's constitutional rights. See Jinks v. Sea Pines Resort, LLC, 2021 WL 4711408, at *6 (D.S.C. Oct. 8, 2021) (noting the distinction between a claim for preliminary and permanent injunctive relief and declining to dismiss a claim seeking a permanent injunction, even though the plaintiff had not necessarily shown a likelihood of success on the merits).

However, upon review, the court finds that Stirling is not a proper Ex parte Young defendant, and the court thus agrees with the R&R that summary judgment is warranted. Stirling is the Director of SCDC. As alleged, the complaint seeks for the court to issue an injunction ordering Stirling "to cease and desist in perpetuity all JumpStart program and related activities" and "from utilizing SCDC Chaplaincy personnel, assets, resources" on JumpStart or any future programs that may involve "approving or referring inmates to outside sources of employment or housing based upon a religious criteria." Compl. ¶ 63. Therefore, the complaint seeks injunctive relief for Buchanan's claim against Stirling under the Establishment Clause of the First Amendment. See id. ¶ 60; see also ECF No.

108 at 25 (discussing Establishment Clause claim only).  Although the R&R did not

formally grant summary judgment based on the substance of Buchanan's Establishment

Clause claim, the Magistrate Judge noted that "[t]o the extent Plaintiff's First

Amendment Establishment Clause claim survives the above recommendation [on

procedural grounds], this claim is also subject to dismissal."  R&R at 45 n.18.  The

Magistrate Judge explained that SCDC's utilization of JumpStart's services "does not

send a message of government endorsement of a religious activity[,] . . . coerce

participation in a religious activity[,] . . . or excessively entangle the government in a

religious activity."  Id. (collecting cases).  In her objections, Buchanan argues that the

R&R "paid very little attention to or analysis [sic] of the Establishment Clause claim,"

and as such, Buchanan chose to simply "reiterate[] the contents" of her response to

defendants' motions for summary judgment.  ECF No. 108 at 25.  In the absence of any

new objections, the court may dispense with a de novo review, but because the

Magistrate Judge admittedly did not consider its finding on Buchanan's Establishment

Clause claim as a principal reason for granting summary judgment, the court agrees to

further examine the issue.

      In Lemon v. Kurtzman, the United States Supreme Court established a three-part

test for determining that government action does not run afoul of the Establishment

Clause: (1) "the statute must have a secular legislative purpose," (2) "its principal or

primary effect must be one that neither advances nor inhibits religion," and (3) "the

statute must not foster an excessive government entanglement with religion."  403 U.S.

602, 612 (1971).[7]  Under <u>Lemon</u>, SCDC's actions do not violate the Establishment

Clause.  JumpStart's involvement at PCI was motivated by the secular Offender

Employment Preparation Program.  There is no dispute that JumpStart was a privately-

funded, voluntary program, and Buchanan was under no obligation to apply or take part.

Johnson Aff. ¶ 7.  And although the court did not deem it relevant for the issue of

whether the JumpStart defendants were acting under color of state law, the court finds it

relevant that there are at least twenty transitional houses and fifteen other programs

across the state that offer housing to released inmates.  Epps Aff. ¶¶ 6–9.  As it relates to

Stirling, that evidence is relevant because allowing multiple organizations—both

religious and nonreligious—to offer classes that grant preference to inmates for post-

release housing or employment does not have a principal or primary effect of advancing

religion, nor does it foster excessive government entanglement with religion.  Instead,

allowing JumpStart to offer voluntary participation in its program abides by the secular

purpose of the Offender Employment Preparation Program—to coordinate efforts across

multiple entities, including private sector entities, to prepare inmates for meaningful

employment upon release from confinement.  Similarly, in <u>Henderson v. Frank</u>, the

Seventh Circuit upheld a Wisconsin district court's decision granting summary judgment

in favor of the warden and head of the Wisconsin prison system.  190 F. App'x 507, 509.

The court emphasized that the plaintiff had failed to provide any evidence that he was

---

[7] At least one court has determined that where the issue is whether a prison program violates the Establishment Clause, courts may eschew the <u>Lemon</u> test in favor of simply looking to "the non-voluntariness of the prison program at issue."  <u>Ross v. Keelings</u>, 2 F. Supp. 2d 810, 817 (E.D. Va. 1998) (citation omitted).  Under this approach, SCDC's decision to work with JumpStart does not violate the Establishment Clause because, as discussed <u>infra</u>, the JumpStart discipleship program is entirely voluntary.

denied parole, advancement through the prison system, or a transfer by refusing to participate in a Christian-oriented behavioral modification program.  Id.  At best, the plaintiff had proven that other prisoners were offended by the availability of the Christian programming.  Id.  Like in Henderson, the court finds that here, Buchanan has failed to show that SCDC's actions—and Stirling's, by extension—violate the Establishment Clause.

Since Buchanan has failed to prove that there is a genuine dispute of material fact regarding her Establishment Clause claim, the court may grant summary judgment in Stirling's favor and deny the injunctive relief sought.  As another basis for granting summary judgment, Buchanan has also failed to plead or show that Stirling has the ability to enforce the relief sought.  "Ex parte Young authorizes suits only against officers with 'some connection with the enforcement of the act.'"  Doyle v. Hogan, 1 F.4th 249, 254 (4th Cir. 2021) (quoting Ex parte Young, 209 U.S. at 157).  Specifically, the plaintiff must show a "'special relation' between the officer being sued and the challenged statute before invoking the exception."  McBurney, 616 F.3d at 399 (citing Ex parte Young, 209 U.S. at 157).  "'[S]pecial relation' under Ex parte Young has served as a measure of proximity to and responsibility for the challenged state action."  S.C. Wildlife Federation v. Limehouse, 549 F.3d 324, 333 (4th Cir. 2008) (emphases in original).  In other words, "the state officer being sued must have both the responsibility for the alleged ongoing violations of federal law and the authority to provide prospective redress for those alleged violations."  Smith v. Demory, 2020 WL 1181310, at *2 (D.S.C. Mar. 12, 2020) (emphasis added).  Here, Buchanan failed to allege or provide any evidence that Stirling was responsible for executing the MOU or was involved in any related decisions to allow

JumpStart to provide its services at SCDC prisons.  Similarly, Buchanan fails to allege or provide evidence that Stirling has the ability to enforce the injunctive relief sought, even if the court were to order it.  Although the complaint certainly attempts to suggest that Stirling has the ability to force SCDC to cease working with JumpStart, the court would be forced to make a leap to reach that conclusion.  For those reasons, the court departs from the Magistrate Judge's reasoning but ultimately grants summary judgment in Stirling's favor.

### F.  Remaining Issues

As previously noted, the court adopts the Magistrate Judge's finding that Buchanan's motion for summary judgment does not present any legal arguments and denies the motion.  To the extent that Buchanan raises any arguments in her objections that she argues are tied to her motion for summary judgment, the court is satisfied that it has addressed those arguments in the context of defendants' motions for summary judgment.

The court also agrees with the Magistrate Judge's conclusion that once the court determines that the federal law claims against the JumpStart and SCDC defendants should be dismissed, the court may decline to retain jurisdiction over the remaining state law claims.  Buchanan does not argue to the contrary.  Accordingly, the court adopts the Magistrate Judge's recommendation and declines to retain jurisdiction over the remaining state law claims.  Since this case was not removed from state court, the proper recourse is to dismiss the claims without prejudice.  See Muldrow v. S.C. Dep't of Prob., Parole & Pardon Servs., 2014 WL 798364, at *1 (D.S.C. Feb. 26, 2014) (dismissing state law

claims without prejudice upon the magistrate judge's recommendation that the court decline to retain jurisdiction over the plaintiff's remaining state law claims).

### IV.  CONCLUSION

For the foregoing reasons the court **ADOPTS IN PART AND REJECTS IN PART** the Magistrate Judge's R&R, in accordance with this order, and **GRANTS** the JumpStart defendants' motion for summary judgment, **GRANTS** the SCDC defendants' motion for summary judgment, and **DENIES** Buchanan's motion for summary judgment in accordance with this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 30, 2022**
**Charleston, South Carolina**